UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**RODNEY MAYS**                                                                                **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 3:08-CV-P128-S**

**CORRECT CARE INTEGRATED HEALTH et al.**                   **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff, Rodney Mays, has filed a *pro se*, *in forma pauperis* complaint (DN 1) pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

**I. SUMMARY OF CLAIMS**

Plaintiff is incarcerated at the Kentucky State Reformatory (KSR). He sues the following in their individual and official capacities: Kentucky Department of Corrections (KDOC) Commissioner John Rees; KSR Warden Larry Chandler; Dr. Scott Haas, KDOC Medical Director; nurses Susan Reffert, Deb Williams, and Roy Washington; Dr. Steven White; and Correct Care Integrated Health, Inc. He seeks monetary and punitive damages and injunctive relief.

In his complaint, Plaintiff alleges that on December 18, 2004, while he was getting out of bed, he experienced excruciating pain in the middle of his right rib area and severe soreness in the middle of his back. He states that, after these pains continued unabated for one month, he requested medical attention. He alleges that he was seen by a nurse practitioner who recommended that Dr. White examine him. Apparently, Dr. White did, and ordered an x-ray. He alleges that after x-rays failed to show any problem, Dr. White ordered milk of magnesium, which did not provide any pain relief.

He alleges that Dr. White then ordered testing of his stool and blood; because his blood test

showed "'H-Polria,'" a bacteria causing a stomach infection, he was given antibiotics.  He was also given an ultrasound of his gall bladder, which was negative for gall stones, and seen on more than one occasion by GI specialists.

He alleges that all of the tests ordered by the GI specialists were negative.  Subsequently, Dr. White diagnosed him with partial diaphragm rupture and recommended a CT scan, specifically of the "'RUQ.'"  Plaintiff was again seen by a GI specialist, who recommended a colonoscopy, which was normal.  According to Plaintiff, Dr. White then had him examined by a psychiatrist, Dr. Keelin, who told him that T-5 and T-6 were ruptured and that he needed an MRI and surgery.  Plaintiff alleges that Dr. White refused to order an MRI, stating that a psychiatrist could not diagnose his physical problems.  He states that he was then seen by Nurse Practitioner Washington, who improperly diagnosed him with a muscle strain.

Plaintiff alleges that on December 11, 2007, Mobilex USA faxed an x-ray report to a Dr. Duval reporting "'Thoracic vertebral bodies show degenerative entophytic spurring.  There is slight compression involving T7 vertebra.  The age of the compression is old or indeterminate.'"  He states that on December 28, 2007, Defendant Correct Care denied Dr. Duval's recommendation that an MRI be performed because it did not meet "'medical necessity.'"  He states that all of his complaints have been administratively exhausted by KDOC.  However, he alleges that he still has not received proper treatment for his constant severe pain with his rib cage.

As relief, he requests $15,000,000 in monetary damages and the same amount in punitive damages.  He requests injunctive relief in the form of an order for Defendants to perform an MRI on him, and he requests that all costs of this action be reimbursed.

Attached to his complaint are some medical progress notes from September 2005.  A February 15, 2006, KDOC medical assessment/plan note stated that Plaintiff had chronic abdominal

pain with possible abdominal strain. It states that Plaintiff had reported having pain for 14 months "after using testosterone from another inmate. He reports symptoms began immediately after using the testosterone patch. Pt. Reports that he use[d] to lift heavy weights up to 450 lbs bench press, and overhead pullover of up to 250lbs." Also attached is a report from an October 2005 CT scan of Plaintiff's abdomen. The impression was: "Patient has a tiny left renal cyst. CT scan of the abdomen is otherwise unremarkable." Plaintiff also attached a May 9, 2007, authorization request from Correct Care Integrated Health, which notes that the request for an MRI was denied. That document states in part: "Abdominal pain Diagnosis: I/M with chr abd pain; had short episode of wt loss, now resolved – indeed, has been able to increase wt/muscle mass. Consultation requested: MRI of abd Reason for consultation: Requested by I/m's mother to complete his extensive examination." An x-ray report for Plaintiff dated December 7, 2007, found a "normal right rib series" and found that the thoracic vertebral bodies showed "degenerative ostephytic spurring" with a "slight compression involving T7 vertebra. The age of the compression is old or indeterminate." A Correct Care determination on December 28, 2007, stated that a request for an MRI was denied, with the box checked for "Does not meet medical necessity."

    Plaintiff also includes grievances dealing with his requests for an MRI. In April 2006, Dr. Haas denied a grievance, stating that he had been followed by a medical care provider in an appropriate fashion and that a number of diagnostic procedures had revealed no pathology. Plaintiff's appeal of that grievance was denied for the same reason.

    Plaintiff also includes a September 2007 letter to Warden Chandler, wherein he asks for an MRI. A response from Warden Chandler states that his response was the same as the Health Care Grievance Committee's.

    A KSR memorandum to Plaintiff dated May 1, 2007, indicated that Dr. White had agreed to

request an MRI, but explained that "[a]n outside doctor will review it; it may or may not be approved."

On May 21, 2007, Plaintiff grieved not having an MRI. That grievance was denied, initially and on appeal. A September 20, 2007, Correct Care Authorization Request indicates that "Dr. Greenman denies MRI and recommends CT of abd."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

### *Official Capacity Claims*

Plaintiff sues each of the defendants in their official capacities. The claims brought against the defendants in their official capacities are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials

sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Thus, to the extent that the plaintiff seeks money damages from these state officers in their official capacities, he has failed to allege cognizable claims under § 1983. Moreover, Defendants are immune from monetary damages under the Eleventh Amendment. *See id.* Therefore, the Court will dismiss the claims for monetary damages against Defendants in their official capacities pursuant to §§ 1915A(b)(1) and (b)(2).

*Eighth Amendment Claims*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Id.* at

5

107. Nor does negligent medical care constitute a constitutional violation without deliberate indifference resulting in substantial harm. *Id.* at 106; *Johnson v. Leonelli*, No. 99-6220, 2000 WL 1434767, at *1 (6th Cir. Sept. 19, 2000). Further, the courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

Here, Plaintiff has received medical attention for his many complaints regarding pain under or around his rib cage. Plaintiff has had X-rays, an ultrasound, a CT scan, medication, and has been seen numerous times by doctors, nurse practitioners, and specialists. His requests for an MRI have been considered and rejected by medical professionals. His is a classic case of a *disagreement* with treatment. As such, it does not rise to the level of a constitutional claim. *See Estelle*, 429 U.S. at 107. Therefore, by separate Order, the Court will dismiss Plaintiff's complaint for failure to state a claim.

Date:


cc:     Plaintiff, *pro se*
        Defendants

4411.009